[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 17, 2006
THOMAS K. KAHN
CLERK

No. 06-10071
Non-Argument Calendar

_____

D. C. Docket No. 04-02420-CV-TWT-1

CYNTHIA LIPSCOMB,

                                                    Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 17, 2006)**

Before BIRCH, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Cynthia Lipscomb appeals the district court's order affirming the

Commissioner's denial of her application for disability insurance benefits,

42 U.S.C. § 405(g), and supplemental security income, 42 U.S.C. § 1383(c)(3).

After review, we REVERSE and REMAND to the district court.

## I. BACKGROUND

The magistrate judge's report, which references the administrative law

judge's ("ALJ") decision stating the relevant facts, accurately recites the medical

evidence and procedural history of this case, and therefore, it is unnecessary for us

to recount it here. On appeal, Lipscomb argues that the ALJ failed to properly

address the significance of Lipscomb's anemia when determining her residual

functional capacity ("RFC"). Lipscomb also argues the ALJ failed to properly

consider the side-effects of Lipscomb's medications. Lipscomb contends that the

district court erred in failing to remand the case to the ALJ for consideration of

"new evidence." Lipscomb asserts that the ALJ failed to show good cause for

rejecting Dr. Abdol Azaran's opinions. Finally, Lipscomb contends the ALJ erred

in failing to recontact Dr. Kim Hammerberg for clarification of his medical

opinion.

## II. DISCUSSION

Our review in this case is to determine whether the Commissioner's decision

is supported by substantial evidence and whether the correct legal standards were

2

applied.  See Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

"Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam).  In reviewing the Commissioner's decision, we do not reweigh the evidence or substitute our judgment for that of the Commissioner, but instead review the entire record.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1997).

Lipscomb argues the ALJ failed to explain adequately the significance of Lipscomb's anemia when formulating Lipscomb's RFC.  If a claimant alleges more than one impairment, the ALJ must consider the impairments in combination in order to determine whether the claimant is disabled.  Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (per curiam).  Where the ALJ finds that the claimant suffers from a severe combination of impairments, the ALJ must consider that combination of impairments throughout the entire disability determination process.  20 C.F.R. § 416.923; see also Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993).  Should the ALJ fail to consider properly a plaintiff's condition despite evidence in the record of diagnosis, remand is required.  Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1219 (11th Cir. 2001).

The ALJ made it clear during step two of the five-step sequential evaluation process that Lipscomb's primary source of restriction was congenital scoliosis. More important, the ALJ stated, "[Lipscomb] has other conditions, none of which imposes any significant and additional limitation of function." R2 at 14. The ALJ considered Lipscomb's anemia to be among these "other conditions." Id. (specifically considering her diagnosis of "iron deficient anemia"). Accordingly, the ALJ properly explained his views on Lipscomb's anemia.

Additionally, the ALJ's conclusions regarding Lipscomb's anemia are supported by substantial evidence. See Foote, 67 F.3d at 1560. During the administrative hearing, Lipscomb failed to mention her anemia. Also, none of the medical reports indicate Lipscomb suffered from significant limitations specifically due to her anemia. While Dr. Janet Riddle noted on an RFC form that Lipscomb had iron-deficiency anemia that caused fatigue, Dr. Riddle did not list any limitations caused by Lipscomb's fatigue. In addition, Dr. Shahla Zaidi made one notation acknowledging that Lipscomb had anemia, but he did not list any limitations related to the condition. Therefore, substantial evidence supports the ALJ's findings regarding Lipscomb's anemia.

Next, Lipscomb argues that the ALJ failed to consider the side-effects of Lipscomb's medications. An ALJ has a duty to investigate the possible

4

side-effects of medications taken by a claimant. See Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981). When there is no evidence that a claimant is taking medications that cause side-effects, the ALJ is not required to elicit testimony or make findings regarding the effect of medications on the claimant. See Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992).

Lipscomb testified that she was taking a variety of medications, one of which, Lorazepam, made her dizzy and paranoid. Lipscomb also stated that her scoliosis and her high blood pressure caused dizziness and lightheadedness. During the RFC analysis, the ALJ did not separately address the amount and impact of the dizziness and lightheadedness caused by each of these three sources. Instead, the ALJ generally stated that Lipscomb "experiences dizziness and lightheadedness that often require her to lie down." R2 at 18. The ALJ then stated that he did not find that, "[Lipscomb's] testimony supports limitations greater than those determined in this decision[.]" Id. "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam). Therefore, it was unnecessary for the ALJ to discuss specifically each potential cause of Lipscomb's dizziness when determining the scope of Lipscomb's limitations.

Also, substantial evidence supports the ALJ's findings on the effects of

5

Lipscomb's medications. At the administrative hearing, Lipscomb stated that Lorazepam made her dizzy and paranoid. But she also testified that she took the Lorazepam at bedtime, and thus, it is reasonable to infer that she did not suffer significant limitations. Lipscomb failed to mention any other side-effects or specific limitations caused by her other medications. In fact, Lipscomb testified that her doctor told her that her dizziness probably was due to her high blood pressure. While Lipscomb points to two instances when she complained of dizziness to her doctors, there is no indication that Lipscomb's dizziness was ever connected to her medication. In addition, Dr. Riddle noted on an RFC medical form that Lipscomb had no medication side-effects. Accordingly, substantial evidence supports the ALJ's findings regarding the effects of Lipscomb's medications.

Lipscomb also contends that new evidence from Dr. Hammerberg, her treating orthopedic surgeon, required remand under 42 U.S.C. § 405(g). We "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). We review de novo the district court's determination regarding whether to remand to the Commissioner

6

based on new evidence. <u>Vega</u>, 265 F.3d at 1218. We will remand a case based on new evidence if the applicant shows that: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." <u>Milano v. Bowen</u>, 809 F.2d 763, 765-66 (11th Cir. 1987) (citation omitted). Such evidence must relate to the time period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b).

Upon thorough review of the record and careful consideration of the parties' briefs, we find that the district court erred in failing to remand this case for review of the new evidence. The evidence, a March 2005 questionnaire completed by Dr. Hammerberg, is new and noncumulative because no similar evidence was presented at the administrative hearing. <u>See</u> <u>Cannon v. Bowen</u>, 858 F.2d 1541, 1546 (11th Cir. 1988). The good cause requirement is also satisfied. The March 2005 questionnaire did not exist at the time of the administrative proceedings. <u>See</u> <u>Cherry v. Heckler</u>, 760 F.2d 1186, 1192 (11th Cir. 1985). Furthermore, the Commissioner does not contend nor is there any evidence to suggest that the March 2005 questionnaire reflects any bad faith attempt by Lipscomb to manipulate the administrative process. <u>See</u> <u>Milano</u>, 809 F.2d at 767. Additionally,

7

Dr. Hammerberg indicated that his questionnaire answers related to his perception of Lipscomb's condition as it existed prior to the ALJ's decision. Specifically, Dr. Hammerberg reviewed: (1) his own treatment records, dated 10 February 2000, to 22 November 2002; (2) the treatment records of Dr. Azaran, dated 25 September 1996, to 9 June 2003; (3) the treatment records of Dr. Zaidi, dated 29 March 2002, to 30 June 2002; and (4) the exam records of Dr. Riddle, dated 29 December 2002. Therefore, the new evidence relates to the time period on or before the ALJ's decision. See 20 C.F.R. § 404.970(b).

Finally, the new evidence is "'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result." See Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986). Importantly, the ALJ found that Dr. Hammerberg's earlier findings were "other substantial evidence" and "entitled to greater weight in the evaluation of disability." R2 at 17. The ALJ heavily relied on Dr. Hammerberg's medical reports and opinions when determining Lipscomb's RFC. In making the RFC determination, the ALJ found that the medical reports of Drs. Azaran and Hammerberg were inconsistent. The ALJ then limited the weight given to Dr. Azaran's opinions because, among other things, "Dr. Azaran is not a specialist in orthopedics and his conclusions are inconsistent with the well-supported findings of Dr. Hammerberg, an orthopedic

8

surgeon." Id. But in the March 2005 questionnaire, after having reviewed his and other doctors' treatment records, Dr. Hammerberg agreed with two of Dr. Azaran's opinions on Lipscomb's capabilities. Specifically, Dr. Hammerberg indicated that the limitations imposed by Dr. Azaran in January and February 2002 were reasonable.

The ALJ also relied on a form Dr. Hammerberg filled out in November 2002 to reject Lipscomb's evidence that she was unable to bend, stoop, pull, lift, or reach without pain. But Dr. Hammerberg did not completely fill out that form, leaving blank the question regarding whether Lipscomb needed to change positions or posture due to pain more than once every two hours. In the March 2005 questionnaire, however, Dr. Hammerberg indicates that Lipscomb's medical condition can reasonably be expected to cause "a need to alternate at will between sitting and standing during the day due to fatigue, or to obtain relief from pain." R1-19 at unenumerated attachment.

Given the credit the ALJ gave to Dr. Hammerberg and because Dr. Hammerberg provided more specific opinions about Lipscomb's capabilities in the March 2005 questionnaire, it is possible that the new evidence, if credited, could change the administrative result. For these reasons, we remand this case so that the ALJ can consider this new evidence. We decline to review the issue of whether the

ALJ properly limited the weight of Dr. Azaran's opinion because the ALJ's consideration of the new evidence may impact the analysis of that issue. Furthermore, the question of whether the ALJ erred in failing to contact Dr. Hammerberg for clarification of his opinion is moot.

We reverse the opinion of the district court and remand this case to the district court with instructions to remand to the Commissioner for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**